### AUSTIN, NICHOLS & CO. v. MORRIS.

1. Is *nulla bona* return an essential prerequisite to creditors seeking equitable relief against a conveyance made by an insolvent debtor for the purpose of defrauding his creditors?

2. A mortgage for a past due debt, not executed *bona fide* for the purpose of securing its payment, but with intent to transfer all of the debtor's property to one or more of his creditors to the exclusion of others, is, in effect, *an assignment* giving preferences, and therefore null and void under section 2014 of General Statutes.

3. Such a transaction may be assailed by creditors, even though their demands be not reduced to judgment. *Gen. Stat., § 2016.*

4. Where a debtor, with the purpose of evading the assignment law, and of transferring all his estate to certain preferred creditors to the exclusion of all others, gave chattel mortgages at short date to three of his creditors for past due debts, covering all his tangible property, and on default consented to a sale in bulk or in parcels, at their option, and on insufficient notice, such mortgages were held void at the suit of the unpreferred creditors.

5. Findings of fact by the Circuit Judge upon testimony taken before him approved.

MR. CHIEF JUSTICE SIMPSON *dissenting.*

Before HUDSON, J., Sumter, February, 1885.

This case is fully stated in the opinion of this court. The evidence was all taken in open court, and consisted of the mortgages, the depositions of the members of the firm of E. H. Frost & Co., and the testimony of other witnesses. The Circuit decree was as follows:

At the trial of this cause, so soon as the plaintiffs' counsel had read the complaint and exhibits, the counsel for the defendants moved to dismiss the complaint because it did not state facts sufficient to constitute a cause of action, in that creditors of David Morris, without first having obtained judgment at law and exhausted their legal remedies, were invoking the aid of this court on its equity side to relieve them of the consequences of deeds of mortgage given by the said Morris to certain of his creditors, in alleged preferences fraudulent as to the plaintiffs.

It is well established that a creditor must first exhaust his remedy at law before he can invoke the aid of equity to relieve

him against ,a fraudulent conveyance of property by a debtor. The only exception to this rule is that contained in section 2016, chapter LXXII., of the General Statutes, which gives to a simple contract creditor, or any creditor who has no judgment, a right to assail on the equity side of the court such an assignment for the benefit of creditors as is set forth in section 2014 of said chapter, without first having reduced his claim to judgment.

Now, the term "assignment" in said section has been defined by our Supreme Court, in the late case of *Wilks* v. *Walker* (22 *S. C.*, 108), to mean not only the usual formal deed of assignment for the benefit of creditors in its directly technical sense, but any other mode of conveyance or transfer of property which is intended to have the effect of an assignment, and which in truth and fact does operate as such, be the said transfers called by whatsoever name. It must, however, be equivalent or tantamount to the instrument technically called an assignment, and must make. preferences prohibited in section 2014. If the instrument or instruments of conveyance in effect accomplish, and are intended to accomplish, what is inhibited in said act, they are within its purview, whether called an "assignment" *eo nomine* or not. The court says: "Any other view, it seems to us, would sacrifice substance to mere form, and enable insolvent debtors by evasion to effect a purpose declared by statute to be unlawful."

Now, the motion to dismiss the complaint, commonly called an oral demurrer, and which in this instance is an objection to the jurisdiction of the court for want of equity shown in the complaint, admits the truth of all the allegations of the plaintiffs. An examination of, the complaint shows that it is there in substance and in strong language alleged that the defendant, David Morris, being totally insolvent, and wishing to prefer certain of his creditors to the exclusion of others, and by far the largest in amount, and intending thus to defraud them of their just demands, did make to the said preferred creditors conveyances of all his property of every description for their sole and exclusive benefit; that he did not do this by an instrument technically called an assignment, but resorted to the subterfuge of chattel mortgages of very short maturity, which were accepted by said

preferred creditors with a full knowledge of the insolvency of
Morris, and his inability to redeem, and with a full knowledge
that all his property was thus conveyed.

Such in substance are the allegations of the complaint, and
the demurrer admits their truth. It is very clear that by such a
transaction an assignment for the benefit of certain creditors is
made to the exclusion of the great body of his other creditors,
and that the attempt is by this mode of conveyance to evade the
plain terms of the act. I therefore overrule the demurrer, hold-
ing that under section 2016 of said act they are admitted to
assail the transaction without waiting first to recover judgment
at law, and obtain a return of *nulla bona* to an execution, before
the possible accomplishment of which the entire stock of goods
would have certainly been sold and the proceeds inevitably lost
to these plaintiffs.

The defendants excepted. The answers were then read and
the trial of the cause proceeded. I do not propose to review the
testimony. It is sufficient to say that I find as a fact that the
evidence fully sustains all the material allegations of the com-
plaint. The defendant, David Morris, at and before he gave
these mortgages on his stock of goods, &c., was clearly insolvent;
hopelessly so. He knew it well, and to the defendant creditors
he conveyed his entire property, consisting of his stock of goods,
&c., and no realty. The mortgages were to mature at a very
short day, less than a month. He knew he could not redeem,
and did not intend to try to do so, but intended that a sale
should take place, and before the maturity of the notes consented
in writing that a sale should be made soon after maturity, and
without the usual time of advertisement. He further knew that
he could not effect this preference by a formal assignment, and
deliberately set himself to work to evade the statute by mort-
gages at short time of maturity. In these transactions he has
violated section 2014 of the General Statutes, and the convey-
ances cannot stand. The invalidity of such an assignment as is
contemplated in said statute does not depend upon the fact
whether or not the preferred creditor has knowledge of the
fraudulent intent of the debtor; the statute declares the assign-

ment invalid, and this is its character regardless of the *bona* or *mala fides* of the preferred creditors.

It is therefore ordered, adjudged, and decreed, that the said mortgages assailed in the complaint be set aside as null and void, and that all rights assigned thereunder be vacated and annulled, and that the property seized and sold, or its value, be delivered and paid over to the receiver appointed under these proceedings, by whichsoever of the said mortgagees the same was so taken and sold, viz., Alexander Morris. And it is further ordered, that the plaintiffs in this action who have proved their claims have judgment therefor, and that such of the creditors of said David Morris as have not, be allowed to come forward and establish their claims before the master of this court, who shall call upon them to do so by advertising to that effect in the *Sumter Watchman and Southron* for the space of two weeks, and that the funds of the said estate be distributed among said creditors as the law directs. The plaintiffs proved their debts, and the same was not questioned by defendants' counsel.

It is further ordered, that it be referred to the master of this court to ascertain and report what would be a reasonable fee to be paid out of the assigned estate to the attorneys for the plaintiffs of record in this cause.

*Mr. Jos. H. Earle*, for appellant.

I. The only question in this case is whether or not the mortgages executed by David Morris to his co-defendants constitute an assignment for the benefit of creditors in the sense of the term used in *Gen. Stat.*, § 2014. If there has been no such assignment made by David Morris, then it must follow that his honor, the Circuit Judge, erred in overruling the demurrer to the complaint. For, notwithstanding the strong language used by the plaintiffs in reference to the fraudulent transfer of their debtors' property, they were not in a position to question such transfers. They came into court as simple contract creditors, and as such they have no standing, except under *Gen. Stat.*, § 2016. A simple contract creditor cannot maintain a bill in equity against his debtor, and the grantee to set aside a fraudulent conveyance

of the debtor's property, even though the debtor be insolvent, and without the aid of the injunction the debt may be lost. He must first proceed at law and exhaust his remedy there. 1 *S. C.*, 186, 96 ; 18 *Id.*, 526. Equity has jurisdiction of fraud, but does not collect debt. A creditor must establish his demand at law, and obtain a lien upon the property before the transfer interferes with his rights, or he has any title to claim relief in equity. *Bump Fr. Conv.*, 533–4; *Wait Fr. Conv.* 80, 81 ; *High Rec.*, 277 ; *High Inj.*, 18, 19.

II. There was no assignment for the benefit of creditors in this case. An assignment is properly the transfer of one's whole interest in any estate ; but it is now generally appropriated to the transfer of chattels, either real or personal, or of equitable interests. 2 *Watk. Conv.*, 227. The common law definition of an assignment is the transferring and setting over to another of some right, title, or interest in things in which a third party, not a party to the assignment, has a concern and interest. 1 *Bac. Abr.*, 329 ; 2 *Bl. Com.*, 326 ; *Burr. Ass.*, 3. When it is said of a merchant that he has "made *an assignment*," it is understood, not that he has made a transfer of some specific article, or portion of property to this or that particular creditor in payment *or as security*, but that he has made a *general* disposition of his property, and suspended his whole business in consequence. *Burr. Ass.*, 148, *f. note*; 1 *Paine*, 188, 195 ; 26 *Vt.*, 462, 473.

III. A mortgage is not an assignment within the meaning of the act. The distinction is that the latter is an absolute transfer of the debtor's property to a trustee or assignee for the purpose of being turned into money and applied to the payment of the debts of the assignor ; the former is a security for a debt and involves a resulting interest to the mortgagor. An assignment is more than a security for the payment of debts; it is an absolute appropriation of property to their payment. *Burr. Ass.*, 12; 21 *N. Y.*, 574 ; 20 *Id.*, 15 ; 13 *Iowa*, 474; 42 *Penn.*, 441; 41 *Cal.*, 566. It does not create a lien upon the property, which is still regarded in equity as the assignor's, but under it the whole estate, legal and equitable, passes to the assignee. This distinction is pointed out in, and made the basis of, the following decisions: 4 *Watts & Serg.*, 383, 391; 7 *Id.*, 335; 2 *Metc.*, 99;

13 *N. H.*, 298; 25 *Id.*, 155; 10 *Conn.*, 280; 26 *Vt.*, 686; 37 *Id.*, 225; 10 *Cal.*, 269; 18 *Ga.*, 668; 27 *Id.*, 385; 1 *Rand.*, 306; 3 *S. C.*, 285.

IV. Under a mortgage of personalty the right of property is absolute at law in mortgagee *after* condition broken. 1 *Tread., Con. R.*, 154. But in equity the rule is: "Once a mortgage, always a mortgage." That which was intended as a security shall never be turned into an absolute conveyance. *McMull. Eq.*, 2. Mortgagee has no right to the property until debt is due. 14 *S. C.*, 162. Mortgagor can enforce his equity of redemption until foreclosure sale. *Jones Chat. Mort.*, § 693. Sale under mortgage must be advertised for fifteen days, unless mortgagor consent, in writing, to a sale in some other mode or on some other notice. *Gen. Stat.*, § 2348. "The doctrine that a mortgagee can, after breach of condition has occurred, obtain an absolute title, is utterly antagonistic to the nature of a mortgage, and had its origin in the time when a valid mortgage or encumbrance could be made only upon an actual change of possession, and prior to the establishment of the equitable powers of courts." *Herm. Chat. Mort.*, 454. In order to get rid of the equity of redemption, the mortgagee must either sell in the manner provided in the mortgage, or in the statute, or under judicial process. *Ibid.*, 453.

V. The case at bar is distinguished from *Wilks* v. *Walker*, 22 *S. C.*, 108. There "the conveyance of the land to Wilks in consideration that he would pay the donor's debt to the Patterson estate, was substantially an *assignment* for the payment of that debt." That case was somewhat analogous to the case of *Peck & Co.* v. *Merrill* (26 *Vt.*, 686), where the debtor made an assignment, and also several mortgages of real estate, all executed about the same time. They were treated as one instrument. The like principle was adjudicated in the following cases, viz.: 10 *Wisc.*, 443; 8 *Iowa*, 96; 45 *Barb.*, 317; 16 *Md.*, 101; 42 *Me.*, 445; 26 *Vt.*, 468. But in the case at bar the instruments executed by the debtor have none of the characteristics of an "assignment." They are mortgages, pure and simple. Before the act known as the assignment act was passed, a debtor could make a preference among creditors in various ways. The mode

usually adopted, and which oftentimes resulted in great injustice to some of the parties interested, was by executing a deed of "assignment for the benefit of creditors." To remedy this evil the act of 1882 was passed. If the statute is not broad enough to afford complete protection, it should be amended by the general assembly, not by the courts. A debtor can give a preference among his creditors by executing a mortgage to one or more of them. *Rice Ch.*, 309; 12 *S. C.*, 154.

*Messrs. Moises & Lee*, contra, *cited* 22 *S. C.*, 108; *Gen. Stat.*, § 2016; 2 *Speer*, 183; 2 *Rich.*, 80; *Jones Chat. Mort.*, §§ 447, 440.

September 17, 1885.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   David Morris and Alexander Morris were partners in a mercantile business at Sumter. The firm did a large business and claimed to be prosperous. On July 1, 1884, the partnership was dissolved, and Alexander retired; David undertaking to pay the debt of E. H. Frost & Co., and giving him for a half interest his note for $2,389.64. David then carried on the business and immediately purchased a large stock of goods, costing in the neighborhood of $20,000. The face of affairs suddenly changed, and David Morris, on December 17, 1884, executed two mortgages to E. H. Frost & Co., one to secure a note to themselves for $1,383.33, and one to them as agent of the Pacific Guano Company for $946.48; and two days after, on December 19, 1884, he executed another mortgage to his brother Alexander, to secure his aforesaid note given at the dissolution for $2,389.64, and also another note for $1,899.38, said to have been cash advanced, making the aggregate sum of $4,289.02.

All these mortgages covered the stock of goods, the only tangible property of David Morris. They were taken as due a few days after their date, viz., on January 1, 1885, and not only contained a clause authorizing seizure when due, but each has endorsed on it the following consent of the mortgagor: "I hereby consent that the mortgaged property within described be sold by

public auction on Tuesday, 8th instant, either in bulk or in par-
cels, at the option of the mortgagees, and under their direction,
and that notice of such sale be given by posting a notice thereof
on the door of the store on Liberty street, and also at the court
house, on one of the front doors thereof. (Signed) D. Morris."
Alexander Morris, being still liable for it as a member of the
late firm of D. Morris & Brother, settled the debt of E. H.
Frost & Co., but took an assignment of the mortgage, so that all
of the mortgages are now claimed by Alexander Morris. Under
these mortgages, the whole of the stock of goods was seized and
sold in bulk, and bought by Alexander Morris, who took posses-
sion of the same.

The plaintiffs, creditors of David after the dissolution, insti-
tuted these proceedings to set aside the aforesaid mortgages and
sale, for injunction, &c. The complaint alleged that "the said
David Morris is wholly insolvent, owing to plaintiffs and other
creditors in the neighborhood of $20,000, the major part of
which was contracted within four months, and since he knew of
his intended insolvency; that on January 2, 1885, the defen-
dant, David Morris, procured and suffered the mortgages afore-
said to be foreclosed upon his entire stock of goods, and by con-
nivance, understanding, and agreement with his co-defendants,
caused, procured, and suffered the entire stock of goods, &c., to
be sold under said mortgages, on a side street in the town of
Sumter, at shortly past 9 o'clock on the morning of January 8,
1885, just six days after the seizure aforesaid, without advertise-
ment, except by a posted notice, and before the plaintiffs, all
*bona fide* creditors of the said Morris, had opportunity or time
to protect their rights, either by contesting the validity of said
mortgages or by causing the property sacrificed at said sale to
bring a full and fair price; that said mortgage to Alexander
Morris was without consideration, and was and is null and void,
and was executed for the purpose of giving to the said Alexan-
der Morris security for a supposed indebtedness, &c.; that the
whole transaction, from the beginning to the end, to wit, from
the dissolution of the firm of D. Morris & Brother to the end of
the sale, which took place on the morning of the 8th instant,
was a systematic scheme to cheat and defraud the entire number

of creditors, aggregating near $20,000, and with the intent to shift the property from the possession of David to that of his co-defendant, Alexander Morris, and thereby preserve the entire property without paying for the same; that the said Alexander Morris has obtained possession of the large and valuable stock of goods recently held by the said David Morris, and is selling and disposing of the same at almost any price offered for cash, and is disposing of such articles as do not pertain to a bar-room business in a reckless manner," &c.    The complaint prayed judgment that said mortgages be declared illegal, fraudulent, and void; that the sale aforesaid be declared illegal and void; that David and Alexander Morris be enjoined from selling said property, and to restore what they had removed; that a receiver be appointed and all the creditors called in by publication, &c.

The cause came on for trial before Judge Hudson, who, after overruling a verbal demurrer that the complaint did not state facts sufficient to constitute a cause of action, heard the evidence and decreed that "by such a transaction *an assignment* for the benefit of certain creditors is made to the exclusion of the great body of his other creditors, and that the attempt is by this mode of conveyance to evade the plain terms of the act.    I therefore overrule the demurrer, holding that under section 2016 of said act they are admitted to assail the transaction without waiting first to recover judgment at law, before the possible accomplishment of which the entire stock of goods would have certainly been sold and the funds inevitably lost to these plaintiffs.    *    *    * In these transactions he has violated section 2014 of the said statute, and the mortgages cannot stand.    *    *    *    The invalidity of such an assignment as is contemplated in said statute does not depend upon the fact whether or not the preferred creditor has knowledge of the fraudulent intent of the debtor. The statute declares the assignment inoperative, and that is its character regardless of the *bona* or *mala fides* of the preferred creditors," &c.    He gave judgment to the plaintiffs for their debt against David Morris, declared the said mortgages null and void, and ordered that the property seized and sold be delivered to the receiver appointed, and that such of the creditors of the said

David Morris as have not, be allowed to come in and establish their claims before the master of the court, and that the funds arising from the sale of the stock of goods be distributed among all the creditors who establish their claims as the law directs, &c.

From this decree, Alexander Morris appeals to this court upon the following grounds: "I. Because the plaintiffs, as simple contract creditors of D. Morris, had no right to question the validity of the mortgages made by him. II. Because there has been no assignment by David Morris for the benefit of creditors. III. Because the mortgages in this case did not constitute such an assignment for the benefit of creditors as is set forth in section 2014 of the General Statutes of the State. IV. Because the mortgagees of said David Morris, defendants herein, did not know, and had no good reasons to believe, that said Morris was insolvent at the time of the execution of said mortgages."

This being a proceeding in which equitable relief is sought, in having the mortgages declared void, it is objected at the very threshold that it is premature, and the court has no jurisdiction to entertain the case—that, admitting the truth of all the allegations of the complaint, the creditors have no right to be heard in this court until they show that they had recovered judgment at law against the debtor and the execution thereon had been returned *nulla bona* before the proceedings were instituted. It is certainly true that equity has no jurisdiction where there is plain and adequate remedy at law, and it is generally required that the want of such plain and adequate remedy should be shown by a judgment and a return of *nulla bona* against the debtor,—that is to say, *inter vivos*, for it does not seem to be considered necessary in the case of a decedent debtor. There is no doubt that such judgment and return are necessary when the conveyance is assailed as merely voluntary, for in such case it cannot appear that any wrong has been done until it is shown that the debtor has not the means of paying the debt with property other than that covered by the contested conveyance. See *Suber* v. *Chandler*, 18 *S. C.*, 526.

As we understand it, however, there is no law requiring such preliminary proceedings as an indispensable prerequisite to seeking equitable relief, but it has been adopted by the courts as the

most satisfactory manner of proving that which is indispensable
to such relief, viz., the fact that the party has no adequate remedy
at law, that the debtor is insolvent, and, outside of the property
in controversy, has not the means from which payment may be
made. This is the very purpose of requiring judgment and a
return of *nulla bona.* If that is shown by other proof or the
admissions of the party, I never could see why judgment should
be insisted on as an indispensable prerequisite. Why insist upon
that evidence if there is other perfectly satisfactory evidence of
the fact in question? especially if the circumstances are such
that the delay in getting judgment may be fatal to the relief
sought. For instance, in this case the allegations of the com-
plaint, admitted by the demurrer and as the Circuit Judge says
"substantially proved," were that David Morris was utterly
insolvent, indeed owned no property whatever outside the stock
of goods covered by the conveyances assailed. In such case it
is difficult to conceive of any necessity for the useless proceeding
of suing him to judgment at law, especially since the courts of
law and equity are united, and the creditor can ask judgment on
his demand and for equitable relief in the same action.

Could there be any other result of requiring such a prelimi-
nary proceeding than to afford by the delay an opportunity to
the defendants, with their expeditious modes of procedure, to
appropriate the personal property involved, and entirely emascu-
late and make useless the proceeding? The plaintiffs needed
much the protection of equity, and they needed it promptly. In
the case of *Case* v. *Beauregard* (101 *U. S.,* 690), it is said by
the Supreme Court of the United States: "But, after all, the
judgment and fruitless execution are only evidence that his legal
remedies have been exhausted or that he is without remedy at
law. They are not the only possible means of proof. The
necessity of resort to a Court of Equity may be made otherwise
to appear. Neither law nor equity requires a meaningless form.
*Bona sed impossibilia non cogit lex.* It has been decided that
where it appears by the bill that the debtor is insolvent, and that
the issuing of an execution would be of no practical utility, the
issue of an execution is not a necessary prerequisite to equitable
interference"—citing many authorities. And see *Pettus* v.

*Smith,* 4 *Rich. Eq.,* 198.    But it is admitted that the authorities upon the subject are not in accord, and as we do not consider the point as necessarily involved in the decision of the case, we make no ruling upon it, but reserve our judgment.

There is no doubt that under the general law a debtor has the right to give one creditor an honest preference over others. Until lately this preference could be effected by confession of judgment, mortgage, or assignment, but it never was the law that this indulgence included the right on the part of a debtor to enter into a conspiracy with one or more of his creditors by which he secured advantages to himself at the expense of his other creditors. *Bird* ads. *Aiken, Rice Ch.,* 73.    Influenced most probably by the abuse of this privilege, the legislature, in 1882, passed an act, now embraced in section 2014 of the General Statutes, which provides as follows: "Any assignment by an insolvent debtor of his or her property for the benefit of his or her creditors, in which any preference or priority is given to any creditor or creditors of the said debtor by the terms of the said assignment over any other creditor or creditors,   *   *   * or in which any provision or disposition of the property so assigned is made or directed other than that the same be distributed among all creditors of the said insolvent debtor equally   *   *   *   and without preference or priority of any kind whatsoever,   *   *   *   such assignment shall be absolutely null and void and of no effect whatever," &c.    While this act only deals with one of the instrumentalities by which preferences might be effected, we cannot doubt that it is a general expression of the legislature against insolvent debtors giving preferences to some creditors over others; for if objectionable when effected by an assignment, we can hardly suppose it to be less objectionable when accomplished in any other way.

It will be observed that this act does not require the creditor to have a judgment and a return of *nulla bona* on the execution against the debtor as a condition precedent to the enforcement of its provisions, which declare in the most general terms that an assignment of his property by an insolvent debtor giving "preference or priority of any kind whatever," shall be utterly null and void; but, on the contrary, section 2016 expressly dispenses

with such preliminary proceedings. Now, as David Morris was undoubtedly insolvent when he executed the mortgages, covering his whole property, to pay certain claims, to the exclusion of all others, it is perfectly manifest that if the transaction had taken the form of an assignment (in reference to merchandise the natural and usual form), it would have been absolutely "null and void."

It is said, however, that there was no assignment, but, on the contrary, mortgages, which the party might legally make. This may be so, if the papers were genuine mortgages, executed *bona fide* for the purpose of securing certain debts. But if they were put in that form as a mere device to evade the law—if the transaction was in fact a transfer of the whole property in payment of certain claims to the exclusion of all others—if the instruments in effect accomplished, and were intended to accomplish, the very purpose of an assignment under another name—should the transaction in the form assumed receive the sanction of the court and be enforced as such? It seems to us that the court cannot sustain an evasion of that kind, simply for the reason that the parties did not call it an "assignment." It is familiar doctrine that equity considers the substance and not the mere form and appearance of things. It is matter of every-day occurrence that instruments, in form absolute conveyances, are, according to the facts and circumstances and the real intention of the parties, declared to be mortgages and treated as such. This court has lately, in reference to this very provision of the law, held that "substance is not to be sacrificed to mere form, to enable insolvent debtors by evasion to effect a purpose declared by statute to be unlawful." See *Wilks* v. *Walker*, 22 *S. C.*, 108. We cannot distinguish this case from that. "A deed of conveyance of real estate to a trustee in trust to hold the said premises as a security for certain creditors, who had accepted the notes of the assignors, &c., and such other creditors as should within a limited time accept the same terms, with power to sell or mortgage the property, held to be an assignment for the benefit of creditors, and not a mortgage." *Stewart* v. *Kerrison*, 3 *S. C.*, 266.

The question is, then, really one of fact as to what was the

intention and purpose of these parties. That question has been
found by the Circuit Judge before whom the testimony was
offered. He found as follows: "The defendant, David Morris,
at and before he gave these mortgages on his stock of goods, &c.,
was clearly insolvent, hopelessly so. He knew it well, and to
the defendant creditors he conveyed his entire property, consist-
ing of his stock of goods, &c., and no realty. The mortgages
were to mature at a very short day, less than a month. He
knew he could not redeem, and did not intend to try to do so,
but intended that a sale should take place, and, before the matu-
rity of the notes, consented in writing that a sale should be made
soon after maturity and without the usual time of advertisement.
He further knew that he could not effect his purpose by a formal
assignment, and deliberately set himself to work to evade the
statute by mortgages at short time of maturity. In these trans-
actions he has violated section 2014 of the General Statutes,
and the conveyances cannot stand," &c.

We have considered the allegations of the complaint and read
all the testimony carefully, and we cannot say that this finding
of the Circuit Judge was error. The instruments were in the
form of mortgages, but they were given at short day, less than
the period allowed for recording. They had in them the Scotch
clause giving permission to seize and sell without foreclosure, and
on them a written consent of the debtor to sell on a given day,
either in bulk or in parcels, and upon entirely insufficient notice.
What was this but substantially an absolute transfer or "assign-
ment" of the property to be delivered on a particular day, for
the purpose of paying certain claims to the exclusion of all
others? What but an effort to give to the brother and late part-
ner, Alexander Morris, under the forms allowed by law, the
whole property of David Morris to the entire exclusion of the
debts, contracted for the very goods thus transferred? It strikes
us as not a little remarkable that a prosperous mercantile firm
should dissolve, the retiring brother taking a large note for his
clear interest in the concern, and that within six months, and
after the purchase of a very large stock of goods upon credit,
the remaining brother should suddenly fail, without even the
means to pay the preferred claims of the retired brother.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER.    While I do not doubt that an insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security, prefer one creditor, yet if the mortgage is really designed, not as a security, but as a means of transferring his property to one or more of his creditors in preference of others, then it seems to me that it is, in effect, though not in form, an assignment, and comes within the mischief intended to be suppressed by section 2014 of the General Statutes.   Such I understand to be the principle upon which the case of *Wilks* v. *Walker* (22 *S. C.*, 108) was decided; and, therefore, I think that case controls this.   The Circuit Judge found as matter of fact that the real purpose of the several mortgages brought in question in this case was to evade the assignment law, and to effect the very object which that law was designed to prevent; and this finding of fact is fully sustained by the testimony. This being the fact, it follows necessarily that this assignment of David Morris, though in the form of mortgages, which were not designed as mere securities, but as a means of transferring his whole property to one creditor in preference of others, must be held void.   For this reason I concur in the conclusion reached by Judge McGowan, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON, *dissenting.*   The material question in this case is, whether under the facts as stated in the opinion of the majority, and as found by the Circuit Judge, the mortgages executed by the defendant, David Morris, to E. H. Frost & Co., and to the defendant, Alexander Morris, can be declared void under section 2014 of the act entitled "assignments by insolvent debtors," found in General Statutes of 1882, page 585.   The Circuit Judge so held, and his ruling has been sustained by the majority of this court.   In this judgment I am unable to concur for the reasons briefly given below.

Section 2014 of the assignment act is as follows:   "Any assignment by an insolvent debtor of his or her property for

the benefit of his or her creditors in which any preference or priority is given to any creditor of the said debtor by the terms of the assignment over any other creditor or creditors, other than as to any debts due the public, or in which any provision or disposition of the property so assigned is made or directed, other than that the same be distributed among all creditors of the said insolvent debtor equally, in proportion to the amount of their several demands, and without preference or priority of any kind whatsoever, save only as to debts due the public, and save only as to such creditors as may accept the terms of such assignment and execute a release of their claim against the debtor, and except as hereinafter provided, such assignment shall be absolutely null and void and of no effect whatsoever."

Previous to the passage of this act a debtor, whether he was insolvent at the time or not, could secure one creditor in preference to another, and this, too, in a general assignment for the benefit of creditors, or by an independent security, provided the preference was *bona fide* and free from any purpose to delay, hinder, and defraud his other creditors. This principle, whether wise or not, I have regarded as well established, and by a long and unbroken current of decisions in this State; in fact, so firmly as to have become almost a rule of property. And, further, I have understood it to be settled beyond controversy that preferences could only be avoided by a direct proceeding to that end, based upon allegations of fraud, either express or implied, instituted by a debtor whose claim had been judicially established, and who was without redress, except by the aid of the property covered by the preference. Now, the question arises, how far has the assignment act of 1882 changed or modified these principles? The important sections of that act are sections 2014 and 2015. As I understand these sections, they refer entirely to preferences made in *assignments* by insolvent debtors for the benefit of creditors generally. They do not touch preferences other than those contained in or connected with such general assignments. As to all other preferences by mortgages, judgments, and such like instruments not connected with a general assignment, they leave the law as previously established, such preferences being vulnerable or not, as the facts of each case

might determine, either at common law or under the statutes of Elizabeth.

Before the assignment act, the law was abundant for vacating any and all fraudulent preferences. This act was not, therefore, intended to meet and destroy such preferences, but it was intended to prevent all preferences in a certain class of cases, whether fraudulent or not, to wit, in general assignments made by judgment debtors for the benefit of their creditors, and it was confined to such cases. This, as it appears to me, was the intention of the act, and this was its extent, as appears, first from its title, "assignments by insolvent debtors;" and, second, from the express terms of the two sections in which its purpose is presented, sections 2014 and 2015. Section 2014 says: "Any assignment by an insolvent debtor * * * for the benefit of creditors, in which any preference is given, * * * shall be null and void." In section 2015 it is provided that: "If any person being insolvent, within ninety days before the making of any assignment * * * for the benefit of his creditors, shall give any preference to any creditor, * * * the same shall be void."

Now, to bring a case under either of these sections, unless we go beyond the terms of the act, the facts must show (1) an assignment for the benefit of creditors, (2) executed by an insolvent debtor, and (3) a preference given to one or more creditors over others contained in the assignment, or given within ninety days previous to the execution of the assignment. Can the mortgages in contest here be properly held to be preferences by an insolvent debtor, contained in an assignment for the benefit of creditors generally, or executed within ninety days before such assignment, and therefore null and void under the act, without regard to the fact whether said mortgages are fraudulent or *bona fide ?* There is no doubt as to the preference, and the insolvency of David Morris when he executed these mortgages is perhaps equally as apparent; but where is the assignment in which, according to the act, these preferences must either be found, or with which they must be connected within ninety days before its execution? Where is the substance to which these conditions, one or both, must attach before the act becomes operative? I do not find it

in the evidence, or in the facts as stated, and therefore I cannot see how the act can apply.

These mortgages may have been founded in fraud, they may be wholly without consideration, and may have been intended to delay, hinder, and defeat the claims of judgment creditors of David Morris, and possibly under section 2016 of the assignment act, they may have been subject to attack by creditors even before obtaining judgment; and when a proper case is presented I shall not hesitate to go to the full extent of the law in uprooting fraudulent transactions. But the question of fraud is not presented here. These mortgages have not been vacated on that ground. They have been vacated because, in the opinion of the court, section 2014 of the assignment act has been violated in their execution, not in terms, but in spirit, and the question involved is the soundness of this conclusion. It is claimed that the object of the assignment act was to prevent an insolvent debtor from giving any preferences, and that wherever and in whatever form this might be done, and whether *bona fide* or fraudulent, still it is void under the assignment act, and should be vacated by the courts. If this be so, the assignment act is, in substance, a bankrupt law, demanding upon insolvency a suspension of all business and a surrender of all assets, making it dangerous and useless to struggle for recovery. This might be a wise law, and one which, in the end, would be best for all. But I do not think that the legislature intended the act in question to be so far-reaching, and therefore I fail to see its application to the facts of this case.

The case of *Wilks* v. *Walker* (22 *S. C.*, 108), as it seems to me, falls short of this case, and therefore does not control it.

Judgment affirmed.